594

## In re VAN VLIET.
### No. 660.

District Court, S. D. Texas, Brownsville Division.

June 19, 1939.

J. M. Mothershead, of Harlingen, Tex., for Debtor.

Abney & Whitelaw, of Brownsville, Tex., for Phoenix Mut. Life Ins. Co.

Davenport & Ransome, of Brownsville, Tex., for First Nat. Bank of Brownsville.

West & Hightower, of Brownsville, Tex., for John Deere Plow Co.

ALLRED, District Judge.

On August 28, 1937, debtor filed his petition under Section 203, 11 U.S.C.A. and the amendments thereto; on August 31, 1937, the Court entered an order approving the petition as properly filed and referring same to the Conciliation Commissioner for procedure under the Acts of Congress and the rules of the Supreme Court. Thereafter debtor submitted to his creditors a proposal of composition or extension. Failing to secure an acceptance of such composition offer, debtor, on November 1, 1937, filed his amended petition asking to be adjudged a bankrupt and to have all the benefits of the provisions of said subsection (s) as amended, 11 U.S.C.A. § 203(s).

An order was then entered adjudging debtor a bankrupt and again referring the matter to the Conciliation Commissioner.

Thereafter, on January 5, 1938, the Court entered an order staying all proceedings and fixing the right to possession by the bankrupt of all his property for a period of three years and ordering payment of an annual rental of $480, which amount has been paid in for the year 1938 and which now awaits distribution in accordance with law.

Creditors Phoenix Mutual Life Insurance Company (holding a first lien on debtor's real property), the First National Bank at Brownsville (holding a mortgage lien for unpaid purchase price of a Ford automobile), and John Deere Plow Company (holding a mortgage lien for unpaid purchase money on a tractor, cultivator and other equipment) have filed motions for dismissal of the proceedings and, in the alternative, for the appointment of a trustee and liquidation of the property against which they have liens, or to permit petitioners to proceed to foreclose their liens outside the bankruptcy court; and directing the payment of the $480 rental paid into the court during the year 1938. These motions having come on for hearing, the Court, on April 1, 1939, appointed a Master to take the testimony and report findings to the Court; and the Master was ordered to file with his findings a transcript of the testimony taken.

The Master has filed the following findings, which are amply supported by the testimony, and are hereby adopted as findings of fact by the Court:

"1. I find that the debtor, Herbert B. Van Vliet, is indebted to the Phoenix Mutual Life Insurance Company in the following sums as of May 1, 1939:

Principal of note dated June 1, 1931, due July 1, 1936........ $1,950.00
Interest on said debt from July 1, 1933, to date at 8% per annum, payable semi-annually (compounded) .............. 1,079.98
Taxes advanced, 1931 to 1937, inclusive ................... 1,247.38
Interest at 8% per annum on taxes advanced from March 1, 1938 ..................... 116.42

Total, exclusive of attorneys' fees, as of May 1, 1939....... $4,393.78

"2. I find that the above indebtedness is past due and is secured by a deed of trust lien on Block 815 of the West Tract Subdivision in the La Blanca Grant, Hidalgo County, Texas, being forty acres of land, more or less, being all of the land owned by the petitioner as revealed by his schedule of assets, and being used and occupied by him as a homestead.

"3. I find the present market value of said land to be the sum of $3,000.00.

"4. I find that the above property is further encumbered by a second deed of trust lien in favor of the Guardian Trust Company of Houston, Texas, securing a principal indebtedness in the sum of approximately $1,950.00, together with interest for at least five years past due thereon.

"5. I find the annual tax requirements for said Block 815 to be the sum of $168.-62, exclusive of flat rate and charges for water used.

"6. I find that the annual interest requirement on the indebtedness of the Phoenix Mutual Life Insurance Company, exclusive of any interest on the past due interest, is the sum of $255.79, and that annual interest on the past due interest is the sum of $84.15.

"7. I find that the total fixed charges against said Block 815 each year, including interest, taxes, and flat rate charges but excluding any interest on the second lien and the charges for water used, is the sum of $568.56.

"8. I find that the First National Bank at Brownsville, Texas, has a valid chattel mortgage lien on a 1937 V-8 Ford Coupe with small pick-up in rear, to secure a principal indebtedness of $458.81 which is all past due.

"9. I find that the debtor purchased this automobile on August 19, 1937, and agreed to pay for same in two deferred installments, and that on August 28, 1937, he filed his first bankruptcy petition.

"10. I find that on August 12, 1937, the Phoenix Mutual Life Insurance Company posted notices of sale under its deed of trust, and that the debtor had no actual knowledge of such action until after he had purchased said automobile.

"11. I find that the debtor owes the sum of $499.04, exclusive of attorneys' fees, at this time on the automobile indebtedness, and that the fair market value of said automobile is less than $400.00 at this time.

"12. I find that the $480.00 fixed by the Conciliation Commissioner herein did not contain any allowance for a reduction of the principal debt due on either the automobile mortgage or the tractor mortgage hereinafter referred to, and that such $480.00 would not do more than pay the taxes, exclusive of flat rate and water charge, and sixty per cent of the annual interest requirement of all lien creditors, with the exception of the second lien deed of trust.

"13. I find that the $480.00 fixed by the Conciliation Commissioner does not include any tax requirements on the automobile or the tractor equipment hereinafter referred to.

"14. I find that the value of the automobile at the end of the three-year stay will not be in excess of $315.00, while the debt due against it will be in excess of $500.00, exclusive of attorney's fees.

"15. I find that John Deere Plow Company has a valid chattel mortgage lien on a tractor, cultivator, and bedder owned by the bankrupt, securing the payment of the deferred purchase price thereof.

"16. I find that the debtor purchased said equipment on July 2, 1937, executing two notes, one for $598.00 due on or before August 1, 1938, and the other for $633.85 due on or before August 1, 1939, both bearing six per cent interest until maturity and eight per cent thereafter, on which debt there is now due the sum of $1,367.35, exclusive of attorney's fees.

596

"17. I find that the John Deere Plow Company has no security other than the above mentioned farm equipment, and that the equipment is fairly worth at this time not in excess of $1,000.00.

"18. I find that at the end of the three-year stay, the tractor equipment will not be worth in excess of $750.00.

"19. I find that the John Deere Plow Company had no actual notice of the original bankruptcy proceedings nor of any offer of composition by the debtor thereunder, and that John Deere Plow Company was not sent any notices of the meetings under the subsequent proceedings when the stay was granted and the rental fixed.

"20. I find that in an attempt to rehabilitate himself, the debtor during the year 1938 rented seventy acres additional to the home place of forty acres, planting and cultivating the same in cotton, and the gross income from his farm operations was the sum of $2,683.61, and that his net income from such operation was approximately $200.00, which said net income was not sufficient to pay the $480.00 rental fixed, and that he has paid into court said $480.00 rental by supplementing such net income through the hiring to the public of the tractor equipment which he operated himself.

"21. I find that this outside tractor work bore the ratio to the work on the home place of fifteen to one.

"22. I find that the debtor proposes this year to raise feedstuffs largely, and that he now has a trench silo constructed, with approximately 125 tons of feed.

"23. I find that the debtor proposes to rehabilitate himself by feeding cattle which he has purchased with borrowed money.

"24. I find that the bank which has advanced money to the debtor to purchase the cattle is under no obligation to continue the operation or enlarge the credit extended.

"25. I find that the debtor now has on hand twenty-nine head of cattle which he is feeding and which he hopes to dispose of at a profit so as to purchase more cattle and finally earn sufficient to refinance himself.

"26. I find that the debtor purchases cattle on the basis of five cents per pound, and after feeding such animals for approximately 120 days, he expects to get as much as seven and one-half cents per pound, with an added growth of approximately 200 pounds per animal and a gross profit of from $15.00 to $20.00 per animal.

"27. I find that the debtor has made no payments of any character to the petitioning creditors since the filing of the proceedings herein.

"28. I find that the debtor has made no payment to Phoenix Mutual Life Insurance Company or to Guardian Trust Company of Houston, Texas, either of principal or interest, since July 1, 1933.

"29. I find that the debtor has made no payment of any kind to the various taxing agencies assessing taxes against his property, other than flat rate, since 1931.

"30. I find by the records in this cause that the debtor filed his amended petition in accordance with the provisions of Subdivision S, Title 11, Section 203, U.S.C.A., and that following the approval of the appraisers' report, no exceptions, objections, nor appeal was taken therefrom within four months, and that by order of this court a stay of all proceedings was granted. I further find that the debtor has attended all meetings of creditors, and has at all times sought to obey the orders of court.

"31. I find that the debtor has shown no progress towards refinancing or rehabilitating himself during the period from the filing of the bankruptcy proceedings down to date."

From the foregoing Findings of Fact, I have concluded:

Although the debtor has made every effort to rehabilitate himself, approximately eighteen months having expired since the stay was entered, it appearing that, except for the stay, he is in worse financial condition now than at the time his petition was filed, and since there is no reasonable probability of his rehabilitation, but on the contrary the creditors' rights may be seriously impaired, creditors are entitled to an order revoking the stay and authorizing them to proceed to foreclose their liens outside this proceeding.

Since the annual rental of $480 was fixed for the use of the land only, and the owners of the mortgage liens upon the personal property have received no payment whatever, either for principal, interest or rental upon such property, it is equitable to distribute the $480 now on deposit among the secured creditors pro rata in the proportion which the debt of each, including principal, interest, attorneys'

fees, taxes and water rentals advanced bears to the sum total of all of such indebtedness.

The courts have uniformly held that where there is no reasonable hope or probability that the bankrupt will be able to rehabilitate himself within the stay period, creditors may be granted permission to proceed with the foreclosure of their liens outside the bankruptcy courts. There is considerable authority to the effect that in such cases the Court is authorized to dismiss the proceedings. The decisions of the Circuit Court for this Circuit (5th) are in conflict as to whether the Court may dismiss entirely, or grant other relief provided by statute. Bartels v. John Hancock Mutual Life Insurance Company, 5 Cir., 100 F.2d 813; In re Henderson, 5 Cir., 100 F.2d 820. In view of this conflict, I think the safer practice in this case would be to authorize the secured creditors to foreclose their liens outside the bankruptcy court.

While I regret finding that there is now no reasonable hope of the debtor rehabilitating himself (especially since he has made every effort in that direction), yet in view of this holding there is no necessity to pass upon the proposal urged by creditors that the proceeding should be dismissed because of an alleged failure of the original composition offer to make a good faith proposition.

Let an order be prepared by counsel in accordance with this memorandum authorizing foreclosure outside the bankruptcy court and distributing the $480 on hand among the secured creditors as herein directed.